**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

|  |  |  |
|---|---|---|
| TRUESIGHT COMMUNICATIONS LLC, | § § § | Case No. 7:25-cv-00462 |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| APPLE INC., | § § | |
| Defendant. | § § § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Truesight Communications LLC ("Truesight" or "Plaintiff") files this Complaint against Defendant Apple Inc. ("Apple" or "Defendant") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

**THE PARTIES**

1.     Plaintiff Truesight is a limited liability company organized and existing under the laws of the State of Texas, with a place of business located at 2226 Washington Avenue, Suite #7 Waco, TX 76701.

2.     Defendant Apple Inc. is corporation organized and existing under the laws of California, with one or more regular and established places of business in this District at least at 12545 Riata Vista Circle, Austin, Texas 78727; 12801 Delcour Drive, Austin, Texas 78727; 6800 W Parmer Lane, Austin, Texas 78729, and 3121 Palm Way, Austin, Texas 78758. Apple may be served with process through its registered agent, the CT Corp System, at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136. In November 2019, Apple stated that it had approximately 7,000 employees in Austin and that it expected to open, in 2022, a $1 billion, 3 million-square-foot campus with capacity for 15,000 employees. *See*

https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/. Apple is registered to do business in the State of Texas and has been since at least May 16, 1980.

## JURISDICTION

3.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4.    This Court has specific and personal jurisdiction over the Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, the Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, as alleged more particularly below.

5.    Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b). On information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing products that infringe Plaintiff's patents as set forth below. As set forth below, Defendant has many regular and established places of business in this District.

6.    The Court has personal jurisdiction over Defendant consistent with the Texas Long Arm Statute and the Due Process Clause of the Fourteenth Amendment. Defendant has purposely availed themselves of the benefits and protections of Texas. Defendant has maintained a presence in this District for years. Defendant conducts continuous and systematic business in this District,

including, among other acts, offering infringing products and services to those residing in this District and soliciting business from people residing in this District. Defendant makes infringing sales of the accused products in this District. Defendant has committed infringing acts within the Western District of Texas giving rise to this action and has established minimum contacts within the forum state of Texas.

7.     This Court has general jurisdiction over Defendant due to its continuous and systematic contacts with the State of Texas, including its ownership and/or lease of land in the State of Texas, and other business activities throughout the State of Texas.

8.     On information and belief, Apple maintains many regular and established places of business within the Western District of Texas including: (1) offices at its two Austin campuses located at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W Parmer Lane, Austin, Texas 78729; (2) a manufacturing facility in Austin; (3) an engineering center at 320 S. Capital of Texas Hwy, West Lake Hills, Texas 78746; and (4) retail stores located at (a) 2901 S. Capital of Texas Highway, Austin, Texas 78746, (b) 3121 Palm Way, Austin, Texas 78758, (c) 7400 San Pedro Avenue, San Antonio, Texas 78216, (d) 15900 La Cantera Parkway, San Antonio, Texas 78256, and (e) 8401 Gateway Boulevard West, El Paso, Texas 79925.  On information and belief, and according to publicly available reports, the Apple Austin campus at 6900 W Parmer Lane initially employed over 5,000 people with the ability to employ up to 15,000 people. *See* https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/.

9.     On information and belief, Apple develops, makes, uses, imports, offers for sale, and/or sells in Texas and the Western District of Texas devices such as iPhones, iPads, MacBooks, Macs, iMacs, and Apple TV units that infringe the Asserted Patents.

10.     The Western District of Texas has been established as an appropriate venue for

patent infringement cases against Apple in other cases. For example, in *Carbyne Biometrics, LLC v. Apple Inc.*, No. 1:23-cv-00324-ADA, Dkt. 84 (W.D. Tex. Feb. 12, 2024), Hon. Alan D Albright denied Apple's motion to transfer the case to the Northern District of California. The Federal Circuit upheld this decision, denying Apple's petition for a writ of mandamus seeking to reverse the district court's ruling. *See In re Apple Inc.*, No. 2024-111, 2024 WL 1153977 (Fed. Cir. Mar. 18, 2024). Accordingly, the Western District of Texas is the proper venue for Truesight's action against Apple, consistent with the facts and reasoning in the *Carbyne* litigation.

11.    Apple employs hardware engineers in Austin, Texas, who work on accused products such as iPhones, iPads, MacBooks, Macs, iMacs, and Apple TV units, as evidenced by recent Apple job postings:

- *CPU Microarchitect/RTL Engineer* ("Apple's Silicon Engineering Group (SEG) is hiring dedicated engineers for CPU architecture and microarchitecture development targeted for low power mobile devices. Apple's Silicon Engineering Group (SEG) designs high-performance, low power microprocessors that power our innovative products, including the **iPhone, iPad, Watch, Vision Pro, and Mac.** We are looking for an engineer to architect and develop RTL for next generation CPUs."). *See* https://jobs.apple.com/en-us/details/200621733-0157/cpu-microarchitect-rtl-engineer?team=HRDWR; https://jobs.apple.com/en-us/details/200621589-0157/cpu-microarchitect-rtl-engineer?team=HRDWR; https://jobs.apple.com/en-us/details/200621633-0157/cpu-microarchitect-rtl-engineer?team=HRDWR (all positions posted on September 17, 2025).

- *CPU Pre-Silicon Engineering Program Manager* ("Come and join the team that delivers the CPUs in the M1/M2 ***Mac, iPhone, iPad, and Apple Watch***! At Apple, we focus on innovative design and principled execution to build the most efficient CPUs that scale across our full range of products and deliver industry-leading power and performance. We partner across hardware, software and systems teams to build truly optimized products and amazing user experiences. To accomplish this, we need technical excellence combined with the expertise to work across the organization and to put each decision in the right context."). *See* https://jobs.apple.com/en-us/details/200621993-0157/cpu-pre-silicon-engineering-program-manager?team=HRDWR (posted on September 23, 2025)

- *Graphics Power Engineer, Platform Architecture* ("We are seeking a highly motivated, innovative, and dedicated engineer to join the GPU Platform Architecture Team; we are a group that is driving advanced exploration for next

generation GPU architectures in ***iPhone, iPad and Mac products***. We rely on strong analytical skills and close collaboration to deliver the best overall solution to our customers. In this highly visible role, you will be at the center of a chip design effort working with all disciplines, with a critical impact on getting high performance products to millions of customers quickly."). *See* https://jobs.apple.com/en-us/details/200622862-0157/graphics-power-engineer-platform-architecture?team=HRDWR; https://jobs.apple.com/en-us/details/200622864-0157/graphics-power-architect-platform-architecture?team=HRDWR (both positions posted on September 25, 2025)

- *SoC Characterization Product Engineer* ("Joining this group means you'll be responsible for crafting and building the technology that operates Apple's devices. Together, you and your team will enable our customers to do all the things they love with their devices. We promote innovation and new technology. The people who work here have reinvented and defined entire industries with the ***Mac, iPhone, iPad, Apple TV, Apple Watch, AirPods, HomePod and a multitude of groundbreaking Accessories***."). *See* https://jobs.apple.com/en-us/details/200600940-0157/soc-characterization-product-engineer?team=HRDWR (posted on September 26, 2025).

- *Senior Service Reliability Engineer - ASE Data Platform* ("The Apple Services Engineering team (ASE) is one of the most exciting examples of Apple's long-held passion for combining art and technology. These are the people who power the App Store, Apple TV, Apple Music, Apple Podcasts, and Apple Books. And they do it at an extensive scale, meeting our high expectations with dedication to deliver a huge variety of entertainment in over 35 languages to more than 150 countries."). *See* https://jobs.apple.com/en-us/details/200623455-0157/senior-service-reliability-engineer-ase-data-platform?team=SFTWR (posted on September 29, 2025).

The above is a non-exhaustive list of at least the 464 Apple job posts listed in Texas on Apple's website:



12.    In addition, various relevant third-party witnesses are located in Austin, Texas, including, for example, Arm, Inc. and its affiliate Arm, Ltd., located at Encino Trace, 5707 Southwest Pkwy Bld 1 Suite 100, Austin, TX 78735, https://careers.arm.com/usa-austin-office, which have a large facility located in Austin and upon information and belief provide architectures for the various chips in at least certain of the Accused Products, such as Apple's A-Series chips and M-series chips, dating back to at least 2014 with respect to the A-series chips and 2020 with the M-series chips.

## PATENTS-IN-SUIT

13.    On February 3, 2015, the United Stared Patent and Trademark Office duly and legally issued U.S. Patent No. 8,949,879 (the "'879 Patent") entitled "Access Controls for Known Content". A true and correct copy of the '879 Patent is attached as Exhibit 1.

14.    On November 25, 2014, the United States Patent and Trademark Office duly and

---

[1] https://jobs.apple.com/en-us/search?location=texas-state995.

legally issued U.S. Patent No. 8,898,803 (the "'803 Patent") entitled "Content and Identity Delivery System for Portable Playback of Content and Streaming Service Integration".  A true and correct copy of the '803 Patent is attached as Exhibit 2.

15.    On March 14, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,595,300 (the "'300 Patent") entitled "Contextual Chapter Navigation".  A true and correct copy of the '300 Patent is attached as Exhibit 3.

16.    37.    On June 3, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,745,749 (the "'749 Patent") entitled "Virtual Secure Digital Card".  A true and correct copy of the '749 Patent is attached as Exhibit 4.

17.    On March 10, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,977,783 (the "'783 Patent") entitled "High-Speed Secure Content Transfer to SD from Kiosk".  A true and correct copy of the '783 Patent is available attached as Exhibit 5.

18.    Truesight is the sole and exclusive owner of all right, title, and interest in the'879 Patent, the '803 Patent, the '300 Patent, the '749 Patent, and the '783 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Truesight also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

19.    The Patents-in-Suit generally relate to methods and apparatuses related to the secure storage and display of digital media.

20.    The '879 Patent relates to technology involving personalized access controls

associated with digital media in a digital library by creating policy decisions regarding use of the asset based on these settings. The access controls can be implemented on an individual or on a group basis.  The technology described in the '879 Patent was developed by Joseph Zipperer, Steven King, and Valiant Seu. For example, the technology is implemented in infringing Apple smartphones, tablets, computers, and televisions, including, but not limited to, the iPhone 11; iPhone 11 Pro; iPhone 11 Pro Max; iPhone SE (2nd gen); iPhone 12 mini; iPhone 12; iPhone 12 Pro; iPhone 12 Pro Max; iPhone 13 mini; iPhone 13; iPhone 13 Pro; iPhone 13 Pro Max; iPhone SE (3rd gen); iPhone 14; iPhone 14 Plus; iPhone 14 Pro; iPhone 14 Pro Max; iPhone 15; iPhone 15 Plus; iPhone 15 Pro; iPhone 15 Pro Max; iPhone 16; iPhone 16 Plus; iPhone 16 Pro; iPhone 16 Pro Max; iPhone 17; iPhone Air; iPhone 17 Pro; iPhone 17 Pro Max; iPhone 16e; iPad mini (5th gen); iPad Air (3rd gen); iPad (7th gen); iPad Pro 11-inch (2nd gen) & 12.9-inch (4th gen); iPad (8th gen); iPad Air (4th gen); iPad Pro 11-inch (3rd gen) & 12.9-inch (5th gen); iPad (9th gen); iPad mini (6th gen); iPad Air (5th gen); iPad (10th gen); iPad Pro 11-inch (4th gen); 12.9-inch (6th gen); iPad Pro 11-inch (M4) & 13-inch (M4); iPad Air 11-inch (M2); 13-inch (M2); iPad Air (7th gen); MacBook Pro 16-inch (2019); MacBook Pro 13-inch (2019); MacBook Air (2019); iMac 21.5-inch/27-inch (2019); Mac Pro (2019); MacBook Air (2020); MacBook Pro 13-inch (2020); iMac 27-inch (2020); Mac mini (2020); iMac 24-inch (M1); MacBook Pro 14-inch (M1 Pro/Max); MacBook Pro 16-inch (M1 Pro/Max); Mac Studio (M1 Max/Ultra); MacBook Air (M2); MacBook Pro 13-inch (M2); Mac mini (M2/M2 Pro); Mac Studio (M2 Max/Ultra); Mac Pro (M2 Ultra); MacBook Pro 14/16-inch (M2 Pro/Max); iMac 24-inch (M3); MacBook Pro 14/16-inch (M3); MacBook Air 13-inch/15-inch (M3); Mac mini (M4); Mac Studio (M4 Max / M3 Ultra); Apple TV HD (4th gen); Apple TV 4K (1st gen); Apple TV 4K (2nd gen); Apple TV 4K (3rd gen) (collectively, the "Accused Products"). The Accused Products, using software and/or applications,

such as Family Sharing, can put content restrictions on certain media, such as television shows, movies, video games, and applications.

21.    The '803 Patent relates to technology for downloading streamed digital media from a device to a media storage system for when the device is not connected to a network.  The technology described in the '803 Patent was developed by David W. Hostetter and Joseph P. Zipperer. For example, the technology is implemented in Accused Products when videos are downloaded to the device's virtual and/or flash memory, such as an SD card or equivalent internal storage. Technology that infringes the '803 Patent includes, but is not limited to, streaming services such as Apple TV.

22.    The '300 Patent relates to technology for systems and methods for chapter navigation of video playbacks along a timeline of the video.  The technology described in the '300 Patent was developed by Todd E. Duffin, Todd R. Malsbary, and Mark E. Phillips.  For example, the technology is implemented in Accused Products that stream videos that allow for chapter navigation and selection within the video, such as through YouTube.

23.    The '749 Patent relates to technology for systems and methods for generating virtual memory.  The technology was developed by Joseph P. Zipperer and John Calixto.  For example, the technology is implemented in Accused Products and other devices through Apple memory modules, including, but not limited to, the Kioxia K5A3RF9864 128 GB NAND flash memory in the iPhone 16 Pro.

24.    The '783 Patent relates to methods and apparatuses for quickly and securely transferring media files to secure storage device, or equivalent thereof, from a media device, such as mobile phones, tablets, computers, and other devices.  The technology described in the '783 Patent was developed by Joseph Zipperer, Mark P. Hahn, and Daniel P. Zipperer.  For example,

the technology is implemented in infringing mobile phones, tablets, computers, including, but not limited to, the Accused Products.

26. Apple has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, to smartphones, tablets, and smart televisions.

26. Apple has had actual notice of the Asserted Patents, at least as of the filing date of this Complaint.

27. Truesight has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

<u>**COUNT I**</u>
**(Infringement of the '879 Patent)**

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29. Truesight has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '879 Patent.

30. Defendant has and continues to directly infringe the claims of the '879 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the '879 Patent, and by performing each and every limitation of one or more method claims of the '879 Patent.

31. The Accused Products each perform the method of at least claim 4 of the '879 Patent: A method in a computing system for creating specific rating policies for digital media

access, the method comprising: under control of the computing system having a memory and a processor, performing the acts of: retrieving media information from the memory comprising a rating based media access policy for a digital content; displaying the rating based media access policy to a user; receiving from the user a first rating based access control policy override action for a first viewer and a second, different, rating based access control policy override action for a second viewer with respect to a same specific digital content, wherein the first viewer and second viewer are separate and distinct from the user from which the override actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer and the second viewer is associated with a second authentication code unique to the second viewer; storing the first and second policy override actions in a rating policy repository wherein future playback of the digital content is allowed or blocked consistent with the stored policy override action, and wherein the first viewer is allowed to access the specific digital content based upon the first authentication code and the second viewer is blocked from access to the specific digital content based upon the second authentication code, wherein the first authentication code comprises a personal identification number (PIN), and wherein the first of the two users is allowed to access the specific digital content in response to determining that a content identifier of the specific digital content matches a user identifier of the first user and the personal identification number of the first user is successfully authenticated.

32.    The Accused Products, through the use of at least parental controls through Family Sharing, perform a method in a computing system (e.g., a mobile phone, tablet, computer, or television) for creating specific rating policies for digital media access, the method comprising: under control of the computing system having a memory and a processor, performing the acts of: retrieving media information from the memory comprising a rating based media access policy for

a digital content. For example, Family Sharing allows users to set ratings (e.g., Teen, PG-13, PG-14) for known digital content (e.g., Apps, Games, Movies, TV).

33.    The Accused Products, through the use of at least parental controls through Family Sharing, perform the step of retrieving media information from the memory comprising a rating based media access policy for a digital content; displaying the rating based media access policy to a user. For example, the Family Sharing comprises a rating policy management module (e.g., Content Restrictions) for selectively setting rating based access control on a per media (e.g., apps, games, movies, TV, books) and per user basis for digital content of a digital library (e.g., iTunes library, App Store library) thereby displaying the rating based media access policy to a user (e.g., a parent).

34.    The Accused Products, through the use of at least parental controls through Family Sharing, perform the step of receiving from the user a first rating based access control policy override action for a first viewer and a second, different, rating based access control policy override action for a second viewer with respect to a same specific digital content.  For example, Family Sharing performs the step of receiving from the user (e.g., a parent) a first rating based access control policy (e.g., PG-13 Movies for a 14-year-old) override action for a first viewer and a second, different, rating based access control policy override (e.g., G Movies for a 7-year-old) action for a second viewer with respect to a same specific digital content (e.g., a PG-13 rated movie).

35.    The Accused Products, through the use of at least parental controls through Family Sharing, perform the step, wherein the first viewer and second viewer are separate and distinct from the user from which the override actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer and the second viewer is

associated with a second authentication code unique to the second viewer.  For example, a first user (e.g., a 14-year-old) and a second user (e.g., a 7-year-old) are separate and distinct from the user (e.g., a parent) from which the override actions are received, and wherein the first viewer is associated with a first authentication code unique to the first viewer (e.g. the 14-year-old's login) and the second viewer is associated with a second authentication code unique to the second viewer (e.g., the 7-year-old's login).

36.     The Accused Products, through the use of at least parental controls through Family Sharing, perform the step of storing the first and second policy override actions in a rating policy repository wherein future playback of the digital content is allowed or blocked consistent with the stored policy override action. For example, Family Sharing operating on an Apple device stores the first policy override action (e.g., access to PG-13 movies for a 14-year-old) and second policy override actions (e.g., no access to PG-13 movies for a 7-year-old) in a rating policy repository wherein future playback of the digital content (e.g., the a PG-13 rated movie) is allowed or blocked consistent with the stored policy override action.

37.     The Accused Products, through the use of at least parental controls through Family Sharing, perform the step, wherein the first viewer is allowed to access the specific digital content based upon the first authentication code and the second viewer is blocked from access to the specific digital content based upon the second authentication code, wherein the first authentication code comprises a personal identification number (PIN). For example, the first user (e.g., a 14-year-old) is required to use their Apple ID to see available content (e.g., a PG-13 movie), while the second viewer (e.g., a 7-year-old) is blocked from accessing the specific digital content based upon the authentication code (e.g., the 7-year-old's login), wherein the first authentication code comprises at least the equivalent of a personal identification number (PIN), such as an Apple ID

log-in.

38.     The Accused Products, through the use of at least parental controls through Family Sharing, perform the step, wherein the first of the two users is allowed to access the specific digital content in response to determining that a content identifier of the specific digital content matches a user identifier of the first user and the personal identification number of the first user is successfully authenticated. For example, the first of the two users (e.g., a 14-year-old) is allowed to access the specific digital content (e.g., a PG-13 movie) in response to determining that a content identifier of the specific digital content identifier (e.g., Family Sharing inclusion of a PG-13 or lower movie) matches a user identifier of the first user (e.g., a 14-year-old's username) and the personal identification number of the first user is successfully authenticated (e.g., a 14-year-old's successful login with password).

39.     Defendant has and continues to indirectly infringe one or more claims of the '879 Patent by knowingly and intentionally inducing others, including Apple customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products.

40.     Defendant, with knowledge[2] that these products, or the use thereof, infringe the '879 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '879 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and

---

[2] Upon information and belief, Apple gained knowledge of the Asserted Patents, including the '879 Patent, when Truesight filed suit against Apple's direct competitors, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., on December 29, 2023. *See Truesight Communications LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:23-cv-00643, Dkt. 1 (E.D. Tex. Dec. 29, 2023).

instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of their infringing activities, thereby remaining willfully blind to the '879 Patent at least as early as the issuance of the '879 Patent.

41.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '879 Patent, but while remaining willfully blind to the infringement.  Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's technical support, marketing, product manuals, advertisements, and online documentation.[3]

42.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '879 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the '879 Accused Products in this District and elsewhere in the United States and causing the '879 Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products, such that the '879 Patent is directly infringed by others. The accused

---

[3] *See, e.g.,* https://support.apple.com/en-us/105121;
https://support.apple.com/guide/iphone/respond-to-a-screen-time-request-iph74e434e84/ios;
https://support.apple.com/guide/iphone/block-apps-app-downloads-websites-purchases-iph3ff83f3b1/ios; https://support.apple.com/en-us/102590;
https://apps.apple.com/us/app/youtube/id544007664. Other evidence of inducement includes references throughout this Complaint to other Apple materials regarding the operation of the Accused Products.

components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the '879 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '879 Patent. Defendant performs these affirmative acts with knowledge of the '879 Patent and with intent, or willful blindness, that they cause the direct infringement of the '879 Patent.

43.    Truesight has suffered damages as a result of Defendant's direct and indirect infringement of the '879 Patent in an amount to be proven at trial.

44.    Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '879 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '803 Patent)

45.    Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

46.    Truesight has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '803 Patent.

47.    Defendant has and continues to directly infringe the claims of the '803 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the '879 Patent, and by performing each and every limitation of one or more method claims of the '879 Patent.

48.    The Accused Products each perform the method of at least claim 1 of the '803 Patent: A method of delivering content by integrating a kiosk delivery system with a streaming

service, the method comprising: transferring content from a kiosk to a flash memory media device, wherein the flash memory media device is configured to be connected to a playback device; and transferring user service information, including user account information for one or more account based digital content streaming services, from the kiosk to the flash memory media device, wherein, responsive to the flash memory media device being connected to the playback device: if the playback device is connected to a network via a network connection having a speed that meets a threshold for streaming digital content, the transferred user service information from the connected flash memory media device is used to access at least one of the one or more account based digital streaming services to stream a higher quality version of the content to the connected playback device for playback, wherein the higher quality version of the content is a high definition version of standard definition content transferred from the kiosk to the flash memory media device, otherwise, the content stored on the connected flash memory media device is used for playback of the content.

49.     For example, the Accused Products, integrated with the Apple TV Application or Service, performs a method of delivering content by integrating a kiosk delivery system with a streaming service (e.g., the Apple TV Application or Service).

50.     The Accused Products, integrated with the Apple TV Application or Service, perform a step of transferring content from a kiosk (e.g., the physical Apple servers in conjunction with the software interface server as an interface of a virtual storefront comprising hardware and software on the Accused Products in conjunction with the Apple TV Application or Service and other related services) to a flash memory media device (e.g., the internal storage of the Accused Products, such as NAND flash memory), wherein the flash memory media device is configured to be connected to a playback device (e.g., an iPhone with the Apple TV Application). For example,

the streaming content from Apple TV can be downloaded and saved on the smartphones SD card or equivalent internal storage, such as NAND flash memory.

51.     The Accused Products, integrated with the Apple TV Application or Service, perform the step of transferring user service information (e.g., user account information), including user account information for one or more account based digital content streaming services (e.g., the Apple TV Application or Service running on the Accused Products stores user credentials information such as username, and password on the user device memory), from the kiosk to the flash memory media device.  For example, the Apple TV Application stores user credentials information such as username and password on the user device memory. This memory can be the internal or external memory of the device.

52.     The Accused Products, integrated with the Apple TV Application or Service, perform the step wherein, responsive to the flash memory media device being connected to the playback device: if the playback device is connected to a network via a network connection having a speed that meets a threshold for streaming digital content, the transferred user service information from the connected flash memory media device is used to access at least one of the one or more account based digital streaming services to stream a higher quality version of the content to the connected playback device for playback, wherein the higher quality version of the content is a high definition version of standard definition content transferred from the kiosk to the flash memory media device. For example, content can be streamed and downloaded through the Apple TV Application and stored on SD cards or equivalent internal storage, such as NAND flash memory, and can be viewed later, even in the absence of a network (e.g., internet). The Apple TV Application can access stored user information such as username and password to streamline online content at an HD quality or higher when the device is connected to the internet and has a

sufficient internet connection speed to stream or download videos at a certain quality, such as of 25 Mbps for 4k streaming (i.e., threshold):

## Check the quality of your previous purchases

If you previously bought an HD movie from the Apple TV app, you might have access to the 4K, HDR, Dolby Vision, or Dolby Atmos enhancements on a compatible device. If your purchase doesn't have a high-quality version now, it might be added later.

To check the video quality, tap or click a movie in your library. Look at the top of the page for the 4K video icon 4K , the HDR video icon HDR , the Dolby Vision icon ▶◀Dolby VISION , or the Dolby Atmos icon ▶◀Dolby ATMOS .

## Check your Internet connection

To stream high-quality video formats, you need a fast Internet connection. Apple recommends a minimum speed of 25 Mbps for 4K streaming. If your Internet connection isn't fast enough, your Apple devices automatically switch the video quality to a lower-quality version.

You can download a copy of an HD movie to your iPhone, iPad, iPod touch, Mac, or PC, but you can't download a 4K version. You might be able to download Dolby Vision and HDR versions to your iOS, iPadOS, and macOS devices.[4]

53.    The Accused Products, integrated with the Apple TV Application or Service, performs a step wherein, responsive to the flash memory media device being connected to the playback device: otherwise, the content stored on the connected flash memory media device is used for playback of the content. For example, the Apple TV Application allows the user to watch movies downloaded on the device SD memory card or equivalent internal storage when there is no internet connection:

---

[4] https://support.apple.com/en-us/119599.

# Download and stream shows, movies, and events from Apple TV+, MLS Season Pass, and Apple TV channels

Learn how to download or stream content from Apple TV+, MLS Season Pass, and Apple TV channels.

## Download a show, movie, or event on your iPhone, iPad, Mac, or PC

1. Open the Apple TV app on your iPhone, iPad, Mac, or PC.
2. Browse or search for a TV show, movie, or event.
3. Choose the show, movie, or event, then choose the Download button on your iPhone, iPad, or Mac. Click the Download button on your PC.
4. To find and play your downloads, go to the Library tab, then choose Downloaded. If Downloaded isn't in your Library tab on your PC, click the More button ••• and turn Downloaded on.
5. Can't download a show or movie? You might have reached the limits for downloads ⊘, or the channel might not allow downloads.

## Download a show, movie, or event on Apple Vision Pro

1. Open the Apple TV app.
2. Browse or search for a show, movie, or event.
3. Pinch and hold the item you'd like to download, then tap Download.
4. To find and play your downloads, open the sidebar, tap Library, then tap Downloaded.
5. Can't download a show or movie? You might have reached the limits for downloads ⊘, or the channel might not allow downloads.

[5]

54.    Defendant has and continues to indirectly infringe one or more claims of the '803 Patent by knowingly and intentionally inducing others, including Apple customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products.

---

[5] https://support.apple.com/en-us/118239.

55.     Defendant, with knowledge[6] that these products, or the use thereof, infringe the '803 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '803 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of their infringing activities, thereby remaining willfully blind to the '803 Patent at least as early as the issuance of the '803 Patent.

56.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '803 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's technical support, marketing, product manuals, advertisements, and

---

[6] Upon information and belief, Apple gained knowledge of the Asserted Patents, including the '803 Patent, when Truesight filed suit against Apple's direct competitors, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., on December 29, 2023. *See Truesight Communications LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:23-cv-00643, Dkt. 1 (E.D. Tex. Dec. 29, 2023).

online documentation.[7]

57.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '803 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the '803 Accused Products in this District and elsewhere in the United States and causing the '803 Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products, such that the '803 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the '803 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '803 Patent. Defendant performs these affirmative acts with knowledge of the '803 Patent and with intent, or willful blindness, that they cause the direct infringement of the '803 Patent.

58.     Truesight has suffered damages as a result of Defendant's direct and indirect infringement of the '803 Patent in an amount to be proven at trial.

59.     Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '803 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

---

[7] *See, e.g.,* https://support.apple.com/en-us/105121;
https://support.apple.com/guide/iphone/respond-to-a-screen-time-request-iph74e434e84/ios;
https://support.apple.com/guide/iphone/block-apps-app-downloads-websites-purchases-iph3ff83f3b1/ios; https://support.apple.com/en-us/102590;
https://apps.apple.com/us/app/youtube/id544007664. Other evidence of inducement includes references throughout this Complaint to other Apple materials regarding the operation of the Accused Products.

## COUNT III
### (Infringement of the '300 Patent)

60.     Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

61.     Truesight has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '300 Patent.

62.     Defendant has and continues to directly infringe the claims of the '300 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the '300 Patent, and by performing each and every limitation of one or more method claims of the '300 Patent.

63.     The Accused Products each perform the method of at least claim 1 of the '300 Patent: A method for navigating a plurality of chapters of video content within a video, the method comprising: reading from a metadata file stored with the video chapter start times, and location on a secure digital card (SD card) of chapter preview images that correspond to the playable content as initially configured and stored on the secure digital card, each chapter comprising a segment of content of the video; presenting, during continuous playback of a video, an on-screen display to a user, the on-screen display including a timeline having a demarcation for the beginning of each of the plurality of chapters of the video and having a marker corresponding to a current position in the video playback, the timeline assembled from the chapter titles, the chapter start times, and the location on the secure digital card of chapter preview images that correspond to the playable content stored as part of the metadata, and the on-screen display including one image for each of the plurality of chapters from the chapter preview images displayed in sequential order parallel to the timeline, wherein a focus identifier marks an image of a chapter corresponding to the current

position within the continuous video playback; receiving a selection of one of the chapter preview images as chapter skip input during the continuous playback of the video; moving the at least one image from each chapter one position along the line with respect to the focus identifier, according to the chapter skip input, wherein the one image is moved to the left when the chapter skip input indicates a skip forward and wherein the one image is moved to the right when the chapter skip input indicates a skip backward; and skipping playback of the video to a chapter identified by the focus identifier such that the video playback continues from the position of the chapter identified by the focus identifier.

64.    The Accused Products, through the YouTube Mobile Application, perform a method for navigating a plurality of chapters of video content within a video. YouTube openly promotes its chapter navigation functionality and offers advice to users on how to incorporate said functionality in their videos. YouTube also added the chapter navigation functionality to its Mobile Application, including on the Accused Products.



65.    The Accused Products, through the YouTube Mobile Application, perform a method of reading from a metadata file stored with the video chapter start times, and location on a secure digital card (SD card) (or equivalent thereof, such as a NAND flash memory in an iPhone) of chapter preview images that correspond to the playable content as initially configured and stored on the secure digital card, each chapter comprising a segment of content of the video. For example, when a user selects to watch certain YouTube videos on the YouTube Application, users will have access to a chapter navigation functionality. The YouTube video will be broken up into several chapters, each with a title and a preview image. The chapters will be displayed on the video

---

[8] https://support.google.com/youtube/answer/9884579?hl=en.

timeline, in a list format, and in sequence with preview images of each chapter and the time corresponding to each chapter:



66.     The Accused Products, through the YouTube Mobile Application, perform a

---

[9] Source: Testing on iPhone 17 Pro Max.

method of presenting, during continuous playback of a video, an on-screen display to a user, the on-screen display including a timeline having a demarcation for the beginning of each of the plurality of chapters of the video and having a marker corresponding to a current position in the video playback, the timeline assembled from the chapter titles, the chapter start times, and the location on the secure digital card of chapter preview images that correspond to the playable content stored as part of the metadata, and the on-screen display including one image for each of the plurality of chapters from the chapter preview images displayed in sequential order parallel to the timeline, wherein a focus identifier marks an image of a chapter corresponding to the current position within the continuous video playback.  For example, during continuous playback of a video on the YouTube Mobile Application, a user can access several on-screen displays of the video's timeline. A first timeline is displayed as a red-and-gray bar at the bottom of the video, which displays the timeline of the entire video in sections. The red portions of the bar designate portions of the video that have already played, while the gray sections indicate sections of the video that have yet to play but have buffered. At least two other timelines are viewable in the video's description. A second timeline has a preview image for each chapter, along with the chapter's start time and its name. When the video is playing a particular chapter, the section of this timeline with the corresponding chapter preview image will be highlighted in a light-gray color. The focus identifier (i.e., a small, red dot on the video bar) is located in the corresponding chapter currently playing while the preview image in the video's description is highlighted. A third timeline – also available in the video's description – is a vertical list of the chapters' start times and names.







67.      The Accused Products, through the YouTube Mobile Application, performs a method of receiving a selection of one of the chapter preview images as chapter skip input during the continuous playback of the video. For example, during continuous playback of a video on YouTube's Mobile Application, a user can skip forward or backward in the video by selecting a

---

[10] Source: Testing on iPhone 17 Pro Max.

chapter in one of the video timelines that has corresponding chapter preview images (e.g., skipping from Chapter "Intro" to Chapter "RAM", as shown below):





[11]

68.     The Accused Products, through the YouTube Mobile Application, performs a method of moving the at least one image from each chapter one position along the line with respect to the focus identifier, according to the chapter skip input, wherein the one image is moved to the left when the chapter skip input indicates a skip forward and wherein the one image is moved to the right when the chapter skip input indicates a skip backward. For example, a user on the

---

[11] Source: Testing on iPhone 17 Pro Max.

YouTube Mobile Application can select to skip forward or backward in a video by clicking on one of the preview images in the chapter timeline, where the preview image corresponds to the chapter to which the user is skipping. If the user clicks on an image to the right of the chapter currently playing on the chapter timeline, the video skips forward. Alternatively, if the user clicks on an image to the left of the image of the chapter currently playing on the chapter timeline, the video skips backwards. The focus identifier (i.e., the red dot on the video playback in the figure above) moves accordingly. In response to skipping forward in the video, the selected video chapter preview image is oriented in the center of the chapter timeline and is highlighted in a light-gray color:





69.     The Accused Products, through the YouTube Mobile Application, performs a method of skipping playback of the video to a chapter identified by the focus identifier such that the video playback continues from the position of the chapter identified by the focus identifier. For example, a user using the YouTube Mobile Application can also skip chapters by moving the focus identifier (i.e., the red dot on the video playback) to the right or to the left (i.e., forward or

---

[12] Source: Testing on iPhone 17 Pro Max.

backward in the video, respectively). The focus identifier's position corresponds to the chapter currently playing in the video:





70.     By way of further example, video content and data, including chapter information, can be stored in the Accused Products in the flash storage, either when streaming or through direct download, such as through the use of a YouTube Premium subscription.

---

[13] Source: Testing on iPhone 17 Pro Max.



71.    Defendant has and continues to indirectly infringe one or more claims of the '300

Patent by knowingly and intentionally inducing others, including Apple customers and end-users,

to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering

---

14 https://support.google.com/youtube/answer/11977233?hl=en&co=GENIE.Platform%3DiOS&oc o=0.

to sell, selling and/or importing into the United States the Accused Products.

72.    Defendant, with knowledge[15] that these products, or the use thereof, infringe the '300 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '300 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of their infringing activities, thereby remaining willfully blind to the '300 Patent at least as early as the issuance of the '300 Patent.

73.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '300 Patent, but while remaining willfully blind to the infringement. Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's technical support, marketing, product manuals, advertisements, and

---

[15] Upon information and belief, Apple gained knowledge of the Asserted Patents, including the '300 Patent, when Truesight filed suit against Apple's direct competitors, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., on December 29, 2023. *See Truesight Communications LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:23-cv-00643, Dkt. 1 (E.D. Tex. Dec. 29, 2023).

online documentation.[16]

74.     By way of further example, Apple openly advertises various streaming services and applications on its products, including Apple TV, as well as YouTube and YouTube TV:



75.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '300 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the '300 Accused Products in this District and elsewhere in the United States and causing the '300 Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the

---

[16] *See, e.g.,* https://support.apple.com/en-us/105121; https://support.apple.com/guide/iphone/respond-to-a-screen-time-request-iph74e434e84/ios; https://support.apple.com/guide/iphone/block-apps-app-downloads-websites-purchases-iph3ff83f3b1/ios; https://support.apple.com/en-us/102590; https://apps.apple.com/us/app/youtube/id544007664. Other evidence of inducement includes references throughout this Complaint to other Apple materials regarding the operation of the Accused Products.

[17] https://www.apple.com/apple-tv-4k/.

Accused Products, such that the '300 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the '300 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '300 Patent. Defendant performs these affirmative acts with knowledge of the '300 Patent and with intent, or willful blindness, that they cause the direct infringement of the '300 Patent.

76. Truesight has suffered damages as a result of Defendant's direct and indirect infringement of the '300 Patent in an amount to be proven at trial.

77. Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '300 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '749 Patent)

78. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

79. Truesight has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '749 Patent.

80. Defendant has and continues to directly infringe the claims of the '749 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the '749 Patent, and by performing each and every limitation of one or more method claims of the '749 Patent.

81. The Accused Products perform the method of at least claim 22 of the '749 Patent:

A method for generating a virtual secure digital (SD) card, the method comprising: reading a media key block and media identification for an SD card; storing the media key block and the media identification; creating a file system for secure data on a storage device for storage of secure data corresponding to a secure data area of the SD card; and creating a file system for user data on the storage device for storage of user data corresponding to a user data area of the SD card, wherein a size of the file system for secure data is determinant on a size of the file system for user data, the determination based on a lookup table providing a relationship between the sizes.

82.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, perform a method for generating a virtual secure digital (SD card).



83.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, perform the step of reading a media key block and media identification for an SD card. For example, during configuration of secure storage, media keys and media identification are loaded and read. By way of further

---

[18] https://www.ifixit.com/Guide/iPhone+16+Pro+Chip+ID/177358#s377135.

example, when a video is loaded into memory on an Apple device, a Digital Rights Management ("DRM") module loads and reads media keys as well as media identification and metadata related to DRM, such as through Apple's FairPlay Streaming ("FPS").



84.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory Secure Enclave, perform the step of storing the media

---

[19] https://developer.apple.com/streaming/fps/.

key block and the media identification. For example, Apple devices implement DRM through FPS, Apple's Secure Enclave, AES Engine, Apple File System ("APFS"), and Effaceable Storage in the NAND Flash memory to store media key blocks and media identification. This information can be stored in the Effaceable Storage region of the NAND and/or the Secure Enclave, which together or separately are analogous to SD cards and/or virtual SD cards. The Apple File System, Effaceable Storage, and Secure Enclave provide a secure area for storing and processing sensitive data:

## Data Protection in Apple devices

On Apple devices with Data Protection, each file is protected with a unique per-file (or per-extent) key. The key, wrapped using the NIST AED key wrap algorithm, is further wrapped with one of several class keys, depending on how the file is meant to be accessed. The wrapped per-file key is then stored in the file's metadata.

Devices with APFS format may support cloning of files (zero-cost copies using copy-on-write technology). If a file is cloned, each half of the clone gets a new key to accept incoming writes so that new data is written to the media with a new key. Over time, the file may become composed of various extents (or fragments), each mapping to different keys. However, all of the extents that comprise a file are guarded by the same class key.

When a file is opened, its metadata is decrypted with the file system key, revealing the wrapped per-file key and a notation on which class protects it. The per-file (or per-extent) key is unwrapped with the class key and then supplied to the hardware AES Engine, which decrypts the file as it's read from flash storage. All wrapped file key handling occurs in the Secure Enclave; the file key is never directly exposed to the Application Processor. At startup, the Secure Enclave negotiates an ephemeral key with the AES Engine. When the Secure Enclave unwraps a file's keys, they're rewrapped with the ephemeral key and sent back to the Application Processor.

The metadata of all files in the data volume file system is encrypted with a random volume key, which is created when the operating system is first installed or when the device is wiped by a user. This key is encrypted and wrapped by a key wrapping key that's known only to the Secure Enclave for long-term storage. The key wrapping key changes every time a user erases their device. On A9 or later SoCs, Secure Enclave relies upon entropy, backed by anti-replay systems, to achieve effaceability and to protect its key wrapping key, among other assets. For more information, see Secure nonvolatile storage.

Just like per-file or per-extent keys, the metadata key of the data volume is never directly exposed to the Application Processor; the Secure Enclave provides an ephemeral, per-boot version instead. When stored, the encrypted file system key is additionally wrapped by an "effaceable key" stored in Effaceable Storage or using a media key-wrapping key, protected by Secure Enclave anti-replay mechanism. This key doesn't provide additional confidentiality of data. Instead, it's designed to be quickly erased on demand (by the user with the "Erase All Content and Settings" option, or by a user or administrator issuing a remote wipe command from a mobile device management (MDM) solution, Microsoft Exchange ActiveSync, or iCloud). Erasing the key in this manner renders all files cryptographically inaccessible.

The contents of a file may be encrypted with one or more per-file (or per-extent) keys that are wrapped with a class key and stored in a file's metadata, which in turn is encrypted with the file system key. The class key is protected with the hardware UID and, for some classes, the user's passcode. This hierarchy provides both flexibility and performance. For example, changing a file's class only requires rewrapping its per-file key, and a change of passcode just rewraps the class key.[20]

## Secure Enclave

The Secure Enclave is a dedicated secure subsystem in the latest versions of iPhone, iPad, Mac, Apple TV, Apple Watch, Apple Vision Pro, and HomePod.

---

[20] https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.



## Overview

The Secure Enclave is a dedicated secure subsystem integrated into Apple system on a chip (SoC). The Secure Enclave is isolated from the main processor to provide an extra layer of security and is designed to keep sensitive user data secure even when the Application Processor kernel becomes compromised. It follows the same design principles as the SoC does—a boot ROM to establish a hardware root of trust, an AES engine for efficient and secure cryptographic operations, and protected memory. Although the Secure Enclave doesn't include storage, it has a mechanism to store information securely on attached storage separate from the NAND flash storage that's used by the Application Processor and operating system.

The Secure Enclave is a hardware feature of most versions of iPhone, iPad, Mac, Apple TV, Apple Watch, Apple Vision Pro, and HomePod—namely:

- All iPhone models starting with iPhone 5s or later
- All iPad models starting with iPad Air or later
- All Mac computers with Apple silicon
- MacBook Pro computers with Touch Bar (2016 and 2017) that contain the Apple T1 Chip
- All Intel-based Mac computers that contain the Apple T2 Security Chip
- All Apple TV models starting with Apple TV HD or later
- All Apple Watch models starting with Apple Watch series 1 or later
- Apple Vision Pro
- All HomePod models

[21]

85.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, perform the step of creating a file system for secure data on a storage device for storage of secure data corresponding to a secure

---

[21] https://support.apple.com/guide/security/secure-enclave-sec59b0b31ff/web.

data area of the SD card. For example, the Accused Produces can create file systems for secure storage on a storage device (e.g., on the NAND flash memory and/or in the Secure Enclave). This file system (e.g., a portion of the NAND flash memory, such as the Effaceable Storage, or the Secure Enclave) corresponds to the secure area of an SD card.

86.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, perform the step of creating a file system for user data on the storage device for storage of user data corresponding to a user data area of the SD card, wherein a size of the file system for secure data is determinant on a size of the file system for user data, the determination based on a lookup table providing a relationship between the sizes.  For example, the Accused Products can create file systems for user data (e.g. the media itself such as encrypted FPS protected media). This information can be stored along with user data on the storage of the NAND flash memory, such as in the Effaceable Storage, or in the Secure Enclave. By way of further example, the Secure Enclave and/or APFS system with Effaceable Storage utilized by Accused Products, such as the iPhone 16 Pro, includes object maps to maps, which are the equivalent of a lookup table. Furthermore, the APFS uses a copy-on-write B-trees, which is the object map that maps object IDs to physical blocks, and extent trees that map file logical ranges to on-disk extents, which is also equivalent to a lookup table:



87.     Defendant has and continues to indirectly infringe one or more claims of the '749

Patent by knowingly and intentionally inducing others, including Apple customers and end-users,

to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering

---

22 https://developer.apple.com/support/downloads/Apple-File-System-Reference.pdf.

to sell, selling and/or importing into the United States the Accused Products.

88.    Defendant, with knowledge[23] that these products, or the use thereof, infringe the '749 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '749 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of their infringing activities, thereby remaining willfully blind to the '749 Patent at least as early as the issuance of the '749 Patent.

89.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '749 Patent, but while remaining willfully blind to the infringement.  Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's technical support, marketing, product manuals, advertisements, and

---

[23] Upon information and belief, Apple gained knowledge of the Asserted Patents, including the '749 Patent, when Truesight filed suit against Apple's direct competitors, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., on December 29, 2023. *See Truesight Communications LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:23-cv-00643, Dkt. 1 (E.D. Tex. Dec. 29, 2023).

online documentation.[24]

90.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '749 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the '749 Accused Products in this District and elsewhere in the United States and causing the '749 Accused Products to be manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products, such that the '749 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the '749 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '749 Patent. Defendant performs these affirmative acts with knowledge of the '749 Patent and with intent, or willful blindness, that they cause the direct infringement of the '749 Patent.

91.    Truesight has suffered damages as a result of Defendant's direct and indirect infringement of the '749 Patent in an amount to be proven at trial.

92.    Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '749 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

---

[24] *See, e.g.,* https://support.apple.com/en-us/105121; https://support.apple.com/guide/iphone/respond-to-a-screen-time-request-iph74e434e84/ios; https://support.apple.com/guide/iphone/block-apps-app-downloads-websites-purchases-iph3ff83f3b1/ios; https://support.apple.com/en-us/102590; https://apps.apple.com/us/app/youtube/id544007664. Other evidence of inducement includes references throughout this Complaint to other Apple materials regarding the operation of the Accused Products.

## COUNT V
### (Infringement of the '783 Patent)

93.     Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

94.     Truesight has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '783 Patent.

95.     Defendant has and continues to directly infringe the claims of the '783 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, at least by making, using, offering to sell, selling, and/or importing into the United States products, such as the Accused Products, that satisfy each and every limitation of one or more claims of the '783 Patent, and by performing each and every limitation of one or more method claims of the '783 Patent.

96.     The Accused Products comprise the system at least claim 12 of the '783 Patent: A non-transitory computer readable storage medium storing instructions thereon, the instructions when executed cause at least one processor to: identify a media file for download to an SD card; pre-allocate space on the SD card for a playable content portion of the media file, wherein the playable content portion of the media file is encrypted by a content key that is encrypted by a user key; write all directory blocks together of the playable content portion of the media file and, thereafter in time, write all data blocks sequentially of the playable content portion of the media file; and write all data that is to be written to an unsecure area of the SD card, including the encrypted playable content, prior in time to writing any data to a secure area of the SD card, except for the user key.

97.     The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, comprises non-transitory computer readable storage medium storing instructions thereon, the instructions when executed

cause at least one processor (e.g., the A18 Pro chip) to identify a media file (e.g., movies and television shows) for download to an SD card (e.g., the Kioxia K5A3RF9864 128 GB NAND flash memory in operation with the Secure Enclave).





98.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, identify a media file (e.g., movies and television shows) for download to an SD Card (e.g., the Kioxia K5A3RF9864 128 GB NAND flash memory in operation with the Secure Enclave). For example, the iPhone 16 Pro identifies a media file such as visual content, music content, and/or audiovisual content for download to Apple's SD card implementation (e.g., the Kioxia K5A3RF9864 128 GB NAND flash memory in operation with the Secure Enclave) through operation with Apple and third-party

---

[25] https://www.ifixit.com/Guide/iPhone+16+Pro+Chip+ID/177358#s377135.

music and video streaming services, such as Apple TV+[26] and Apple Music[27] applications, as well as YouTube.

> ## Download a show, movie, or event on your iPhone, iPad, Mac, or PC
>
> 1. Open the Apple TV app on your iPhone, iPad, Mac, or PC.
> 2. Browse or search for a TV show, movie, or event.
> 3. Choose the show, movie, or event, then choose the Download button on your iPhone, iPad, or Mac. Click the Download button on your PC.
> 4. To find and play your downloads, go to the Library tab, then choose Downloaded. If Downloaded isn't in your Library tab on your PC, click the More button ••• and turn Downloaded on.
> 5. Can't download a show or movie? You might have reached the limits for downloads ⌄, or the channel might not allow downloads. [28]

---

[26]        https://support.apple.com/en-us/118239#:~:text=show%20or%20movie?-,You%20might%20have%20reached%20the%20limits%20for%20downloads%2C%20or%20the ,(or%20your%20family's)%20devices.

[27] https://support.apple.com/guide/music-web/welcome/web.

[28] https://support.apple.com/en-us/118239.

## Add music to iPhone and listen offline

As soon as you subscribe to Apple Music, you can add and download songs and videos from Apple Music to your music library. You can stream music you add to iPhone when you have an internet connection. To play music when you're not connected to the internet, you need to download it first.

Siri: Ask Siri something like, "Add this to my library" while playing something. Learn how to use Siri.

### Add music from Apple Music to your library

1. Go to the Music app 🎵 on your iPhone.
2. Do any of the following:

   - Touch and hold a song, album, playlist, or video, then tap Add.
   - While viewing the contents of an album or playlist, tap + near the top of the screen to add the album or playlist, or tap ••• next to a song, then tap Add to add that song.
   - On the Now Playing screen, tap ⊕, then tap Add.

Music you add to iPhone is also added to other devices if you're signed in to the same Apple Account and have Sync Library turned on (go to Settings ⚙ > Apps > Music, then turn on Sync Library).

### Download music from Apple Music to your iPhone

Before you can download music from Apple Music to your library, you need to turn on Sync Library. Go to Settings ⚙ > Apps > Music, then turn on Sync Library. Then follow these steps to download music.

1. Go to the Music app 🎵 on your iPhone.
2. Do any of the following:

   - *Download a song, album, or playlist:* Touch and hold music you added to your library, then tap Download.

     After you add a playlist or album, you can also tap ↓ at the top of the screen.

   - *Always download music:* Go to Settings ⚙ > Apps > Music, then turn on Automatic Downloads. Songs you add are automatically downloaded to iPhone.

   - *See download progress:* On the Library tab, tap Downloading.

*Note:* If the music you're downloading is available in Dolby Atmos, the Dolby icon 🔊 appears next to the item, and you can download it either in Dolby Atmos or in stereo. To download music in Dolby Atmos when available, go to Settings ⚙ > Apps > Music, then turn on Download in Dolby Atmos. See Play Dolby Atmos music.

[29]

99.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, identify pre-allocate space (e.g., through AVAssetDownloadStorageManager and AVAssetDownloadStorageManagementPolicy and eviction priority) on the SD card (e.g., the iPhone 16 Pro equipped with the Kioxia

---

[29]                    https://support.apple.com/guide/iphone/add-music-and-listen-offline-iph0cff2d191/ios#:~:text=As%20soon%20as%20you%20subscribe,need%20to%20download%20it%20first.

K5A3RF9864 128 GB NAND flash memory and Secure Enclave) for a playable content portion of the media file, wherein the playable content portion of the media file is encrypted by a content key (e.g., on a per-frame base) that is encrypted by a user key (e.g., passcode-derived key (PDK)).

---

**AVAssetDownloadStorageManager**

An object that manages policies to automatically purge downloaded assets.

iOS 11.0+ | iPadOS 11.0+ | Mac Catalyst 13.1+ | macOS 10.15+ | visionOS 1.0+

```
class AVAssetDownloadStorageManager
```

## Topics

### Accessing the Shared Manager

```
class func shared() -> AVAssetDownloadStorageManager
```
Returns the shared storage manager instance.

### Setting the Storage Policy

```
func storageManagementPolicy(for: URL) -> AVAssetDownloadStorageManagementPolicy?
```
Returns the storage management policy for a downloaded asset.

```
func setStorageManagementPolicy(AVAssetDownloadStorageManagementPolicy, for: URL)
```
Sets a storage policy for the downloaded asset.

[30]

---

- The FPS framework initializes the key delivery process to create a session with the content provider key server.

- The content provider key server wraps the 128-bit AES content key with the session key and an anti-replay mechanism.

- The key delivery process implements a triple-protection solution (AES, RSA, and derivation functions).

- The content provider encrypts the H.264 video content on a per frame basis using AES-CBC mode with the content key and the initialization vector.

[31]

---

**Passcode-derived key (PDK)** The encryption key derived from the entangling of the user password with the long-term SKP key and the UID of the Secure Enclave. [32]

---

[30] https://man7.org/linux/man-pages/man1/fallocate.1.html#:~:text=fallocate%20is%20used%20to%20manipulate,success%20and%201%20on%20failure.

[31] https://developer.apple.com/streaming/fps/FairPlayStreamingOverview.pdf

[32] https://help.apple.com/pdf/security/en_US/apple-platform-security-guide.pdf.

100.    For example, encryption and/or decryption are implemented on the Accused Products for media content through FairPlay Streaming APIs and persistable content key bloba. (Apple's implementation and/or equivalent of DRM).



---

[33] https://developer.apple.com/documentation/avfoundation/avcontentkeysession.



101.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, write all directory blocks together of the playable content portion of the media file (e.g., the APFS updates/creates B-tree nodes) and, thereafter in time, write all data blocks sequentially of the playable content portion of the media file. For example, through FairPlay Streaming, the downloaded movies are stored in encrypted segments (e.g., on a per frame basis), such as MPEG-DASH or HLS segments (e.g., m4s, .ts, or .exo files).

---

[34] https://developer.apple.com/documentation/avfoundation/avpersistentcontentkeyrequest.



## Key Delivery Process

FPS allows a content provider to securely deliver an AES 128-bit content key from the provider's key server. The content provider encrypts the H.264 video content with the content key. Then, FPS decrypts the encrypted video content with the content key. Figure 1-1 shows the key and content exchange.

**Figure 1-1**   FPS exchanges



**Figure 1-2**   FPS communication sequence

---

## Context Persistence

For iOS, the FPS framework may persist the play context for offline playback. The server indicates the nature of the Content Key type (i.e., transient or persistent) in the CKC response. When the Content Key type needs persistence, FPS creates a persistent play context that the application manages. The play context is cryptographically resistant and FPS links the play context with the iOS device.

The application may save the play context within the iOS file system. If the Content Key has an expiration time, the play context includes the expiration. However, the play context never expires for a Content Key without an expiration time. The application has the full flexibility to manage a play context that does not expire. [35]

---

102.    The Accused Products, such as the iPhone 16 Pro equipped with the Kioxia K5A3RF9864 128 GB NAND flash memory and Secure Enclave, writes all data that is to be written to an unsecure area of the SD card (e.g., user accessible data written during download to the unsecure area of the Kioxia K5A3RF9864 128 GB NAND flash memory), including the encrypted playable content, prior in time to writing any data to a secure area of the SD card (e.g., the secure area of the NAND flash memory, such as the Effaceable Storage) after the media is downloaded), except for the user key (e.g., stored in the Secure Enclave).

103.    Defendant has and continues to indirectly infringe one or more claims of the '783 Patent by knowingly and intentionally inducing others, including Apple customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States the Accused Products.

104.    Defendant, with knowledge[36] that these products, or the use thereof, infringe the '783 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '783 Patent by

---

[35] https://developer.apple.com/streaming/fps/FairPlayStreamingOverview.pdf.

[36] Upon information and belief, Apple gained knowledge of the Asserted Patents, including the '783 Patent, when Truesight filed suit against Apple's direct competitors, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., on December 29, 2023. *See Truesight Communications LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:25-cv-00759, Dkt. 1 (E.D. Tex. Aug. 1, 2025).

providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, with the subjective belief that there was a high probability that Defendant would learn of their infringing activities, thereby remaining willfully blind to the '783 Patent at least as early as the issuance of the '783 Patent.

105.    Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '783 Patent, but while remaining willfully blind to the infringement.  Defendant has and continues to induce infringement by its customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's technical support, marketing, product manuals, advertisements, and online documentation.[37]

106.    Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '783 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the '783 Accused Products in this District and elsewhere in the United States and causing the '783 Accused Products to be

---

[37] *See, e.g.,* https://support.apple.com/en-us/105121;
https://support.apple.com/guide/iphone/respond-to-a-screen-time-request-iph74e434e84/ios;
https://support.apple.com/guide/iphone/block-apps-app-downloads-websites-purchases-iph3ff83f3b1/ios; https://support.apple.com/en-us/102590;
https://apps.apple.com/us/app/youtube/id544007664. Other evidence of inducement includes references throughout this Complaint to other Apple materials regarding the operation of the Accused Products.

manufactured, used, sold, and offered for sale contribute to others' use and manufacture of the Accused Products, such that the '783 Patent is directly infringed by others. The accused components within the Accused Products including, but not limited to, software manufactured by Defendant, are material to the invention of the '783 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendant to be especially made or adapted for use in the infringement of the '783 Patent. Defendant performs these affirmative acts with knowledge of the '783 Patent and with intent, or willful blindness, that they cause the direct infringement of the '783 Patent.

107.    Truesight has suffered damages as a result of Defendant's direct and indirect infringement of the '783 Patent in an amount to be proven at trial.

108.    Truesight has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '783 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Truesight prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.    An order awarding damages sufficient to compensate Truesight for Defendant's

infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

     d.     Enhanced damages pursuant to 35 U.S.C. § 284;

     e.     Entry of judgment declaring that this case is exceptional and awarding Truesight its costs and reasonable attorney fees under 35 U.S.C. § 285; and

     f.     Such other and further relief as the Court deems just and proper.

Dated: October 10, 2025                     Respectfully submitted,

                                         */s/ Raymond W. Mort, III*
                                        Raymond W. Mort, III
                                        Texas State Bar No. 00791308
                                        raymort@austinlaw.com

                                        **THE MORT LAW FIRM, PLLC**
                                        111 Congress Ave, Suite 500
                                        Austin, Texas 78701
                                        Tel/Fax: (512) 865-7950

                                        ***ATTORNEYS FOR PLAINTIFF,***
                                        ***TRUESIGHT COMMUNICATIONS LLC***